**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | ) | **Bankruptcy No. 24-21192-JAD** |
| **SHANNON M. EDWARDS,** | ) | **Chapter 7** |
| **Debtor.** | ) | |
| | X | |
| **SHANNON M. EDWARDS,** | ) | **Adversary No. 24-02082-JAD** |
| **Plaintiff/Debtor,** | ) | **ECF No. 30** |
| **-v-** | ) | |
| **UNITED STATES DEPARTMENT OF EDUCATION,** | ) | |
| **Defendant.** | ) | |
| | X | |

**MEMORANDUM OPINION**

Before the Court is the *United States' Motion for Summary Judgment* (the "Motion") filed by Defendant, the United States Department of Education (the "Department"). The Department seeks judgment as a matter of law on the complaint filed by Plaintiff/Debtor Shannon M. Edwards ("Edwards"), which asks the Court to determine that her federal student-loan obligations are dischargeable under 11 U.S.C. § 523(a)(8). See *Complaint to Determine Dischargeability of Student Loan Pursuant to 11 U.S.C. §523(a)(8)* (the "Complaint"), ECF No. 1.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. A proceeding to determine the dischargeability of a particular debt is a

core proceeding under 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter final judgment.

Section 523(a)(8) generally excepts qualifying educational debt from discharge unless repayment would impose an "undue hardship" on the debtor and the debtor's dependents. In this Circuit, "undue hardship" is governed by the three-part test announced in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987), and adopted in Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 304-06 (3d Cir. 1995). Edwards ultimately bears the burden of proving each element by a preponderance of the evidence, and failure to prove any one element defeats discharge. See In re Faish, 72 F.3d at 306; Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324, 327-28 (3d Cir. 2001).

That ultimate burden, however, is not the question presently before the Court. Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. The Department must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, as here, the nonmovant (i.e. Edwards) will bear the burden of proof at trial, the movant may discharge its initial burden by identifying an absence of evidence sufficient to support an essential element of the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986).

The burden then falls on the nonmovant to identify particular record materials demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(c)(1).

In deciding whether that showing has been made, the Court must view the evidence and draw reasonable inferences in Edwards' favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The Court may not weigh competing evidence or resolve credibility disputes. Anderson, 477 U.S. at 249. At the same time, Rule 56 does not require the Court to construct a party's case for her: the parties must identify the record materials on which they rely, although the Court may consider other materials in the record. Fed. R. Civ. P. 56(c)(1), (3). The question is therefore narrow but consequential: has the Department shown that, even crediting Edwards' evidence and drawing reasonable inferences in her favor, no reasonable factfinder could find for Edwards on at least one indispensable element of Brunner/Faish?

## I. SUMMARY OF DECISION

The answer is no. The Department has developed a substantial record and identified serious weaknesses in Edwards' case. Those weaknesses may ultimately prevent her from carrying the demanding burden imposed by section 523(a)(8), particularly under the second and third Brunner prongs. But weakness of proof is not the same as the absence of a genuine factual dispute, and skepticism is not a substitute for trial where resolution depends on credibility and competing reasonable inferences.

Several features of the record are central. As of April 20, 2026, Edwards owed $763,261.56 in federal student-loan debt, including $650,446.32 in principal and $112,815.24 in accrued interest. *Declaration of Erin K. Hughes* ("Hughes Declaration") ¶ 10 & Attach. 4, ECF No. 32-6 at ECF pgs. 7, 61-62.[1] See *United States' Concise Statement of Material Facts* ("Concise Statement of Material Facts" or "CSMF") ¶ 5, ECF No. 32; *Response to United States' Concise Statement of Material Facts* ("Response to Concise Statement of Material Facts" or "Response to CSMF") ¶ 5, ECF No. 35.[2] The Complaint, relying on an account statement attached thereto as Exhibit A, alleges a scheduled monthly payment of $7,642.34, while Edwards' summary-judgment brief later refers to a total student-loan projected payment—inclusive of a $1,100 monthly payment on "an additional private loan"—of approximately $8,600. Complaint ¶¶ 11 & 20; *Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Brief in Support Thereof* ("Opposition") 4-5, ECF No. 34. Neither figure is an admitted fact in the parties' Concise Statement of Material Facts and response thereto, and the Court does not rely on either as establishing the present conventional payment. What is undisputed is the size of the debt and the availability of an income-driven plan requiring a current

---

[1] The Hughes Declaration is attached to the *United States' Concise Statement of Material Facts* (ECF No. 32) as Exhibit E.

[2] Citing the Hughes Declaration, the Department states in its Concise Statement of Material Facts that the portion of the total $763,261.56 outstanding as of April 20, 2026 attributable to interest is "$11,815.24." CSMF ¶ 5. This appears to be a typographical error as the Hughes Declaration identifies the outstanding interest as "$112,815.24." Hughes Declaration, Attach. 4 (ECF No. 32-6 at ECF pg. 62). Simple arithmetic supports the latter figure as $763,261.56 - $650,446.32 (principal) equals $112,815.24.

payment of approximately $0.00. See CSMF ¶¶ 14 & 15; Response to CSMF ¶¶ 14 & 15.

That $0.00 option is relevant, but the Department has identified no controlling authority making enrollment in a repayment plan mandatory or treating eligibility for such a plan as dispositive under section 523(a)(8). Nor is a $0.00 payment economically equivalent to reducing the debt: it pays no principal and, if the debt remains nondischargeable, postpetition interest remains a personal liability. See Bruning v. United States, 376 U.S. 358, 360-63 (1964); Leeper v. Pa. Higher Educ. Assistance Agency, 49 F.3d 98, 101-03 (3d Cir. 1995). The Court therefore reserves judgment on the ultimate significance of Edwards' decision not to enroll.

On the present record, factual disputes remain concerning Edwards' actual minimal standard of living needs, the extent to which her current expenses can reasonably be reduced, the effect of the non-APA-accredited[3] doctoral program on her earning capacity and employment opportunities, the realistic relationship between her future earnings and a debt exceeding three-quarters of a million dollars, and the good faith reflected by her payment history and financial choices. Those issues are sufficiently intertwined with testimony and credibility that they should be resolved at trial. The Motion will therefore be denied.

[3] American Psychological Association (the "APA").

## II. UNDISPUTED FACTS AND AREAS OF DISAGREEMENT

The parties have narrowed the factual field considerably through the Department's Concise Statement of Material Facts and Edwards' response. Edwards admits most of the Department's numbered statements, while disputing principally the inferences the Department draws from those facts. See Response to CSMF.

Edwards earned a Bachelor of Arts degree in Psychology and Criminal Justice from California University of Pennsylvania in 2006. CSMF ¶ 7; Response to CSMF ¶ 7. She later earned a master's degree in forensic psychology and a doctorate in clinical forensic psychology from the Chicago School of Professional Psychology. CSMF ¶ 8; Response to CSMF ¶ 8. In her deposition (the "Edwards Deposition"),[4] Edwards testified that the doctoral program was not accredited by the APA and that the lack of APA accreditation restricts certain government and out-of-state employment opportunities, although she is licensed to practice psychology in Pennsylvania. Edwards Deposition 22:8-24:2; Response to CSMF ¶ 8.

Edwards has operated Edwards & Associates, her private forensic-psychology practice, since approximately December 2015. CSMF ¶ 16; Response to CSMF ¶ 16. She remains capable of working and identifies no physical or medical condition that impairs her ability to do so. CSMF ¶ 28; Response to CSMF ¶ 28. The Department also points to Edwards' testimony that she does not presently want to give up her private practice. CSMF ¶ 20;

[4] The Edwards Deposition is attached to the Concise Statement of Material Facts as Exhibit A, ECF No. 32-2.

Edwards Deposition 40:4-5. Edwards responds that she sees no better alternative and attributes some limitation in available opportunities to the non-APA-accredited doctorate. Response to CSMF ¶ 20.

The financial record is less tidy. Edwards reported current monthly household gross income of $3,734.00 in her Attestation,[5] while Schedule I reflected monthly income of $5,561.21. CSMF ¶ 17; Response to CSMF ¶ 17. Her 2022 federal tax return reflected adjusted gross income of $44,808, while her 2024 return reflected total income of $8,254 and adjusted gross income of $1,931. CSMF ¶ 18; Response to CSMF ¶ 18. Edwards explains that her self-employment income varies depending upon patient volume and collection of patient accounts. Response to CSMF ¶ 17.

Edwards' expense figures also vary over time. Her bankruptcy schedules listed rent of $2,405.00; discovery responses listed $2,795.59; and at deposition she testified that her then-current rent was $2,750.00, inclusive of amounts charged with the rent. CSMF ¶ 21; Response to CSMF ¶ 21; Edwards Deposition 7:2-8:8. She testified that she had moved from a more expensive Lawrenceville apartment in 2019 (which was $2,500 at that time), to her current location which was then $1,950, but that the rent at her current location had since increased. Edwards Deposition 30:9-31:1. She explained that, after several moves associated with a contentious divorce, she hoped to remain in the apartment until her daughter graduated. Id. Edwards' daughter

[5] "Attestation of Shannon Edwards in Support of Request for Stipulation Conceding Dischargeability of Student Loans[,]" attached as Exhibit C (ECF No. 32-4) to the Concise Statement of Material Facts. Hereinafter, the "Attestation".

attends Oakland Catholic High School. Edwards testified that annual tuition and related charges are approximately $17,900, of which she pays roughly one-quarter under the parents' arrangement, along with some additional school and activity expenses. Id. at 24:3-30:8.

The Department challenges other spending as well. Its Concise Statement of Material Facts identifies April 2025 business-account transactions including $1,100 for *Hamilton* tickets for Edwards' daughter's birthday, $315 for salon and spa appointments, and more than $780 in UberEATS charges. CSMF ¶ 22. Edwards admits the cited transactions but denies that isolated transactions fairly represent her overall spending habits. Response to CSMF ¶ 22. She likewise admits testifying that reducing rent was not an option "at this point" and that she was not attempting to reduce expenses for her daughter, but she states that she would consider moving if a better alternative became available. CSMF ¶ 23; Response to CSMF ¶ 23.

The federal student-loan balance dwarfs the other figures in the record. As of April 20, 2026, Edwards owed $763,261.56, consisting of $650,446.32 in principal and $112,815.24 in accrued interest. As discussed above, the Department's Concise Statement of Material Facts states the interest component as $11,815.24, but the Hughes Declaration and the arithmetic establish that the intended figure is $112,815.24.

Edwards' federal loans are eligible for income-based repayment ("IBR"). CSMF ¶ 12; Response to CSMF ¶ 12. Before this adversary proceeding, Edwards participated in the SAVE plan, under which her required federal

payment was $0.00. CSMF ¶ 14; Response to CSMF ¶ 14. Based upon the 2024 tax return and a family size of two, the Department calculates that an available IBR plan would likewise require a current payment of approximately $0.00. CSMF ¶ 15; Response to CSMF ¶ 15. Edwards does not dispute the calculation; she disputes what follows from it. She states that she has not pursued IBR due to this litigation, further noting that IBR would not discharge the debt and interest would continue to accrue. Response to CSMF ¶ 13.

Edwards' direct payments on her federal loans have been minimal: the Department's records reflect $183.73 received as of January 9, 2026. CSMF ¶ 26; Response to CSMF ¶ 26. Her treatment of private educational debt is markedly different. Edwards currently pays approximately $1,100 per month on private student loans, has repaid approximately $150,000 on those loans, and owes approximately $70,000. CSMF ¶ 24; Response to CSMF ¶ 24; Edwards Deposition 19:14-20:9. She testified that she continues making those payments even though she believes she may presently be excused from doing so on account of her bankruptcy because she does not want the burden shifted to her cosigners. Edwards Deposition 20:10-21:7.

These facts frame the dispute. The Department views Edwards as an educated, healthy, employable professional who has paid almost nothing on her federal loans, has not minimized all expenses, and can presently obtain an IBR payment of $0.00. Edwards emphasizes fluctuating income, asserted employment limitations associated with a non-APA-accredited doctorate, her substantial repayment of private educational debt, and a federal balance that a

$0.00 payment would not reduce. Civil Rule 56 asks whether the competing inferences arising from that record can be resolved as a matter of law.

## III. STANDARD FOR DISCHARGE OF STUDENT-LOAN DEBT UNDER 11 U.S.C. § 523(a)(8)

Section 523(a)(8) excepts qualifying educational debt from discharge "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). As discussed in In re Faish, the Third Circuit adopted Brunner and as such requires the debtor to prove: (1) that, based on current income and expenses, she cannot maintain a minimal standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances indicate this state of affairs is likely to persist for a significant portion of the repayment period; and (3) that she has made good-faith efforts to repay. In re Faish, 72 F.3d at 304-05 (quoting Brunner, 831 F.2d at 396).

The test is conjunctive. "All three elements must be satisfied individually before a discharge can be granted." In re Faish, 72 F.3d at 306. Edwards bears the burden of proof on each element by a preponderance of the evidence. In re Brightful, 267 F.3d at 327. In re Faish also instructs that equitable concerns or other factors outside the Brunner framework may not substitute for proof of the three elements. 72 F.3d at 306. Those principles govern the merits; at summary judgment, the question is whether the record would permit a reasonable factfinder to find for Edwards on each indispensable element.

**A. First Prong: Minimal Standard of Living**

The first prong asks whether Edwards can maintain, "based on current income and expenses, a 'minimal' standard of living" for herself and her dependent if required to repay the loans. In re Faish, 72 F.3d at 305 (quoting Brunner, 831 F.2d at 396). The standard requires more than "tight finances" and is not satisfied where reasonable "short-term, belt tightening" would permit repayment, but it does not require poverty. Flickinger-Luther v. ECMC (In re Flickinger-Luther), 462 B.R. 157, 161 (Bankr. W.D. Pa. 2012)(citations omitted). The inquiry is individualized and turns on whether the debtor can meet basic needs while repaying the student-loan obligation.

The Department's principal argument is straightforward, but it ultimately rests upon a concept of attribution. Because Edwards apparently could elect an income-driven repayment program under which her presently required monthly payment would be $0.00, the Department asks the Court effectively to attribute that $0.00 payment to Edwards for purposes of the first Brunner prong. From that premise, the Department reasons that repayment necessarily can impose no present hardship: a debtor cannot be unable to maintain a minimal standard of living because of a payment that, if she elected the available program, would presently be $0. That argument has surface appeal, but it is too categorical for summary judgment. In Reagan v. Educational Credit Management Corp. (In re Reagan), Chief Judge Taddonio of this Court rejected the proposition that a $0.00 income-based payment necessarily defeats the first Brunner prong. 587 B.R. 296, 301-03 (Bankr. W.D. Pa. 2018).

The inquiry remains whether, considering Edwards' current financial circumstances, she can make the required student-loan payment and maintain a minimal standard of living. Id. at 303.

There is also a practical distinction between a payment set at zero and repayment of the debt. A $0.00 payment reduces neither principal nor accrued interest. If the debt remains nondischargeable, postpetition interest may accrue and remain collectible from the debtor personally. Bruning, 376 U.S. at 360-63; Leeper, 49 F.3d at 101-03. Thus, eligibility for a $0.00 plan may alleviate immediate cash-flow pressure, but it does not by itself answer the first-prong inquiry.

The longer-term consequences of the particular income-driven alternative available to Edwards also are not adequately developed in the present summary-judgment record. Income-based repayment can extend for as long as twenty-five years before the Secretary repays or cancels the remaining balance of principal and interest, with a twenty-year period applicable to certain newer borrowers. See 20 U.S.C. § 1098e(b)(7), (e)(2); see also 34 C.F.R. § 685.209(k)(1)-(2). During that period, the treatment of unpaid interest can materially affect the balance. See 20 U.S.C. § 1098e(b)(2)-(4). The Department has not developed a record showing what Edwards' balance reasonably would be over the applicable repayment period, how interest would be treated under the particular plan available to her, or what amount ultimately might remain for cancellation.

Nor does the present record address the potential tax consequences of eventual loan forgiveness. As current federal tax law stands, cancellation of indebtedness generally constitutes gross income unless an exclusion applies. 26 U.S.C. §§ 61(a)(11), 108. The broad temporary exclusion that applied to certain student-loan discharges through December 31, 2025, no longer applies to post-2025 income-driven forgiveness. Whether Edwards ultimately would recognize taxable income would depend upon the law and her circumstances at the time, including any applicable exclusion such as insolvency. See 26 U.S.C. § 108(a)(1)(B), (a)(3). And if forgiveness were to produce an income-tax liability, the dischargeability of that tax liability in a later bankruptcy could itself depend upon, among other things, the timing and circumstances of the later case. See 11 U.S.C. §§ 507(a)(8), 523(a)(1).

The difficulty with the Department's attribution argument is that it treats the availability of the $0.00 payment as though Edwards had already elected it and assumes that her decision not to do so has no legitimate economic explanation. The present record does not permit either assumption. Edwards offers countervailing reasons for declining the program, including that a $0.00 required payment does not actually repay the debt and that interest may continue to accrue on an already extraordinary balance. See Response to CSMF ¶ 13. Moreover, as discussed above and on the record at the hearing on the Motion, it is not lost on this Court that indebtedness ultimately forgiven after an extended repayment period may carry consequences of its own. See Audio Recording of July 7, 2026 Hr'g at 11:43:52-11:45:26. The Court does not

determine at summary judgment that Edwards' explanations are sufficient, economically sound, or ultimately credible. Nor does the Court hold that the availability of a $0.00 income-driven payment is irrelevant. It is plainly relevant. But relevance is different from attribution. The sufficiency and credibility of Edwards' explanations, and the weight properly given to the available $0.00 payment, are matters for trial rather than summary judgment.

Accordingly, on the present record, the Court finds it inappropriate to attribute to Edwards a hypothetical $0.00 monthly payment that she has not elected and then use that attributed payment to conclude, as a matter of law, that she cannot satisfy the first Brunner prong. The Department remains free at trial to demonstrate that the available income-driven program provides a realistic repayment alternative, that Edwards lacked a reasonable basis for declining it, and that the $0.00 payment should therefore carry substantial or even decisive weight in the undue-hardship analysis. Edwards likewise bears the burden of proving why the availability of that program does not defeat her claim. Those competing positions require factual determinations on a more complete record.

Edwards' own presentation, however, is far from ideal. Because she bears the ultimate burden, she will need to present a coherent and credible account of her actual income and the expenses reasonably necessary to maintain a minimal standard of living. As this Court explained in Lepre v. Department of Education (In re Lepre), a court need not accept scheduled income and expenses at face value and must have a sufficiently accurate financial picture

to conduct the first-prong analysis. 466 B.R. 727, 732-34 (Bankr. W.D. Pa. 2012), aff'd, 530 F. App'x 121, 123-24 (3d Cir. 2013). Edwards' varying income and rent figures, the presence of another adult in the household,[6] private-school expenses, and the discretionary transactions identified by the Department all warrant examination at trial.

The Court does not hold on this paper record that Edwards' present rent or her contribution to private-school tuition is reasonable or necessary to a minimal standard of living. Nor does it hold the opposite. Edwards testified that she previously moved to reduce rent, that the rent later increased, and that she now seeks residential stability for her daughter; she also testified concerning the amount she contributes toward her daughter's school expenses. Whether those explanations are credible, and whether those expenses reasonably can be reduced without falling below a minimal standard of living, are factual questions. Edwards will bear the burden at trial of explaining why the expenses she asks the Court to recognize are consistent with Brunner's minimal standard.

The record nevertheless contains evidence from which a factfinder could find the first prong satisfied. Edwards reported current monthly household gross income of $3,734.00 in her Attestation, while Schedule I reflected $5,561.21 per month; her 2024 return reflected total income of $8,254 and adjusted gross income of $1,931. CSMF ¶¶ 17-18; Response to CSMF ¶¶ 17-

[6] In her deposition, Edwards testified that in addition to herself and her daughter, Edwards' partner, Ron Horne, resides with her. See Edwards Deposition 5:9-14. See also CSMF ¶ 6; Response to CSMF ¶ 6. Edwards' testified that while Mr. Horne does not directly contribute to rent, he contributes to utility and grocery costs. Edwards Deposition 7:22-8:8.

18. Her Attestation further states that, after the expenses reported there, she had no remaining monthly income. Attestation ¶ 16. The Department vigorously challenges the reasonableness of several expenses, and Edwards' figures are not entirely consistent. But those are precisely the disputes that prevent the Court from concluding, as a matter of law, that reasonable belt-tightening necessarily would leave sufficient funds for repayment.

Edwards therefore survives summary judgment on the first prong, but only in the Rule 56 sense. She must still prove a reliable minimal-living budget and justify the expenses the Department challenges. Viewing the present record in her favor, however, a reasonable factfinder could conclude that she cannot maintain a minimal standard of living while repaying the federal loans, and In re Reagan persuasively rejects treating a $0.00 income-driven payment as an automatic answer. Summary judgment is unwarranted on the first prong.

### B. Second Prong: Additional Circumstances and Persistent Inability to Repay

The second prong requires proof that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period[.]" In re Faish, 72 F.3d at 305 (quoting Brunner, 831 F.2d at 396). It is a demanding requirement. In re Brightful explains that present financial distress is not enough; the debtor must show "a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control," and that discharge should rest on a "certainty of hopelessness," not

merely a present inability to pay. 267 F.3d at 328 (citations omitted)(alteration in the original).

The Department has forceful facts on this prong. As discussed above, Edwards is educated, licensed in Pennsylvania, has operated a forensic-psychology practice for roughly a decade, remains employed, and identifies no disabling physical or medical condition. Those facts may ultimately make the "certainty of hopelessness" standard difficult for her to satisfy. The Court does not minimize that difficulty.

But the Department's showing does not eliminate every genuine factual issue. Edwards testified from personal knowledge that her doctoral program was not APA accredited and that this has excluded her from VA positions, most government positions, and practice in several states. Edwards Deposition 22:8-24:2. She also testified concerning her employment efforts, including an application for a teen-outreach director position for which she was not interviewed because, according to what she was told, the salary was too low for her. CSMF ¶ 19; Response to CSMF ¶ 19; Edwards Deposition 39:22-40:2. The weight ultimately due that testimony, the extent of the employment limitations, and whether Edwards has adequately pursued realistic alternatives are matters the Court can assess more reliably after hearing her testimony and any contrary proof.

Future earning capacity, however, cannot be examined in isolation from the obligation to be repaid. The second prong asks whether the debtor's inability to repay is likely to persist. A finding that Edwards can continue to

earn income does not itself establish that she can realistically repay a federal student-loan balance of $763,261.56. The amount of the debt is not an extraneous equitable consideration; it defines the obligation against which future repayment capacity must be measured.

Edwards' historical income has fluctuated materially. CSMF ¶¶ 17-18; Response to CSMF ¶¶ 17-18. The Department may prove at trial that she has materially greater earning capacity than those historical figures suggest, that the accreditation issue is overstated, or that any inability to repay is substantially self-imposed. But those are propositions to be proved, not inferences the Court may draw against Edwards at the summary judgment stage.

The available $0.00 IBR option does not change the procedural result. Income-driven repayment may bear on future repayment prospects, but the Department has identified no controlling Supreme Court or Third Circuit authority holding that a debtor must enroll in such a plan before invoking section 523(a)(8), much less that eligibility for a $0.00 payment conclusively defeats the second prong. The Court therefore reserves judgment on the legal and evidentiary weight of Edwards' decision not to enroll. That question is better addressed on a complete trial record concerning the plan's terms and consequences.

In re Brightful's "certainty of hopelessness" requirement is demanding, but hopelessness need not necessarily take the form of disability, unemployment, or some other obvious personal incapacity. Depending upon

the evidence, it may instead be structural—arising from an enduring disparity between the debtor's reasonably attainable earning capacity and the magnitude of the educational debt that must be repaid. The Court neither suggests that a large student-loan balance, standing alone, establishes undue hardship, nor does it treat the amount of the debt as an extraneous equitable consideration prohibited by In re Faish. Rather, the amount of the obligation is necessarily part of the repayment inquiry: whether a debtor's inability to repay is likely to persist cannot be evaluated in the abstract, without considering the debt that must be repaid.

That distinction may prove important here. Edwards does not contend that she is incapable of working. To the contrary, she is educated, professionally licensed, presently employed, and identifies no physical or medical condition preventing her from working. Those facts weigh heavily in the Department's favor. But they do not necessarily answer the question presented by the second prong. Edwards owes more than $763,000 in federal student-loan debt. Her theory is that, notwithstanding continued employment and reasonable efforts to maximize her earnings, the disparity between what she can realistically earn over the relevant repayment period and what she owes is so substantial and enduring that her inability to repay is structurally hopeless within the meaning of In re Brightful. Whether the evidence ultimately proves that proposition remains to be determined.

That determination requires a factual record. Edwards may testify concerning her education, employment history, professional opportunities,

actual earnings, efforts to increase those earnings, and, to the extent permitted by the Federal Rules of Evidence, her anticipated professional prospects. To the extent timely disclosed and otherwise admissible under the Court's discovery orders, expert testimony may bear upon her reasonably attainable earning capacity, the practical consequences of her non-APA-accredited doctorate, and whether any realistic professional trajectory would permit repayment of an obligation of this magnitude. The Department likewise may offer contrary evidence, including any properly disclosed expert testimony, demonstrating that Edwards possesses materially greater earning capacity or repayment prospects than she claims. The Court cannot resolve those competing factual propositions on summary judgment. Summary judgment is therefore unwarranted on the second prong.

**C. Third Prong: Good-Faith Efforts to Repay**

The third prong requires Edwards to prove a good-faith effort to repay. In re Faish, 72 F.3d at 305; Brunner, 831 F.2d at 396. Relevant considerations include the debtor's payment history, efforts to obtain and maintain employment, efforts to maximize income and minimize expenses, and use of available repayment or restructuring options. See In re Flickinger-Luther, 462 B.R. at 163-64. The inquiry is guided by the principle that undue hardship should not result from a default the debtor willfully or negligently caused; the condition instead must arise from factors beyond the debtor's reasonable control. In re Faish, 72 F.3d at 305 (discussing the good-faith inquiry).

The Department again has substantial evidence. Edwards has paid only $183.73 directly on federal loans now exceeding $763,000. She is not presently enrolled in the available IBR program. The Department also points to expenses it contends could have been reduced and to Edwards' testimony that she does not want to abandon her private practice. Those facts are plainly relevant and may weigh heavily at trial.

They are not, however, the entire record. Edwards previously participated in SAVE, under which her required federal payment was $0.00. Her Attestation also describes efforts to obtain consolidation and her experience with income-driven repayment and forbearance. Attestation ¶¶ 22-26. Most significantly, the undisputed record shows that Edwards has repaid approximately $150,000 on private educational loans, continues to pay approximately $1,100 per month, and owes approximately $70,000 on those loans. She testified that she continues those payments in part because she does not want the burden shifted to cosigners. A factfinder could reasonably view that history as evidence that the paucity of federal payments does not, standing alone, establish an unwillingness to honor educational debt.

Nor will the Court hold on summary judgment that declining a $0.00 IBR payment necessarily demonstrates bad faith. In re Flickinger-Luther holds that participation in repayment programs may be a persuasive factor in the good-faith analysis, but failure to use such a program is not dispositive. 462 B.R. at 163-64. Here, the proposed current payment is $0.00, and such a payment would not reduce principal; if the debt remains nondischargeable, postpetition

interest remains collectible from Edwards personally. Bruning, 376 U.S. at 360-63; Leeper, 49 F.3d at 101-03. The Court therefore reserves judgment on what Edwards' refusal to enroll says about good faith.

The same caution applies to the Department's expense evidence. The *Hamilton* tickets, salon and spa charges, food-delivery expenses, housing costs, and private-school contributions are relevant to whether Edwards has minimized expenses. Edwards disputes the inference that isolated transactions represent her ordinary spending and offers explanations for her housing and child-related expenses. Good faith depends not simply on whether an expenditure occurred, but on the debtor's overall pattern of conduct and the reasons for her financial choices. Those matters are appropriately tested through testimony and cross-examination.

Edwards has not established good faith merely by surviving the Motion. At trial she must account for the very small amount paid on the federal debt, explain her repayment choices, establish reasonable efforts to maximize income and minimize expenses, and persuade the Court that her circumstances were not willfully or negligently created. But the present record permits competing reasonable inferences. Resolving them would require weighing evidence and assessing credibility, so summary judgment is unwarranted on the third prong.

## IV. CONCLUSION

The Court's ruling is procedural, not predictive. Edwards faces a formidable burden under section 523(a)(8), Brunner, In re Faish, and In re Brightful. The Department has identified evidence that may ultimately defeat

one or more elements of her claim: Edwards is educated, licensed, employed, and free of any identified disabling medical or physical condition; she has made only nominal direct payments on her federal loans; and aspects of her spending and employment choices warrant close scrutiny. Edwards will bear the burden of persuasion on all of those matters at trial.

The record also contains evidence that cannot be resolved against Edwards without factfinding. Her federal debt exceeds $763,000. Her reported income is modest by comparison and has fluctuated materially. She contends, based on her own professional experience, that the non-APA-accredited doctorate limits employment opportunities. She has repaid approximately $150,000 of private educational debt while continuing to work in her field. And the available income-driven option presently requires approximately $0.00—a circumstance relevant to current cash flow, but not one that itself reduces principal.

The Court therefore does not decide today whether Edwards' rent is reasonable, whether private-school expenses are necessary, whether she has maximized her earning capacity, whether her accreditation-related limitations will persist, whether she should enroll in an income-driven plan, or whether her overall conduct satisfies good faith. Those are trial questions on this record. Civil Rule 56 asks only whether a genuine dispute exists for trial, and genuine disputes remain as to each <u>Brunner</u>/<u>Faish</u> prong.

Accordingly, the Department has not demonstrated entitlement to judgment as a matter of law. The Motion will be denied. An appropriate Order follows.

Dated: September 16, 2026

jlh

The Honorable Jeffery A. Deller
United States Bankruptcy Judge

Case Administrator to Mail to:
All parties of record in adversary proceeding

FILED
9/16/26 4:04 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA